IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, <br><br>Plaintiff,<br><br>v.<br><br>FIDELITONE, INC. and JASMINE LOCKE,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 23 C 16940<br>)<br>) Judge Joan H. Lefkow<br>)<br>)<br>) |

**OPINION AND ORDER**

Not that long ago, teaching first year law students removal in their Civil Procedure class was relatively straightforward. When a defendant was sued in its own state's courts by out-of-state parties, the case could not be removed to federal court if diversity of the parties provided the sole basis for federal jurisdiction. Then the internet introduced a major wrinkle. Sophisticated litigants can now employ computer programs that crawl court dockets minute-by-minute[1] and provide alerts the moment a lawsuit is filed—typically days or weeks before the putative defendant receives service. This enables such defendants to file a notice of removal in just a few hours, exploiting statutory language that suggests in-state defendants are only prohibited from removing to federal court if "properly served and joined" to defeat the "forum-defendant rule"

---

[1] *E.g.,* Case Portal, https://www.cnscaseportal.com/ (last visited Mar. 20, 2024); CourtAlert, https://www.courtalert.com/ (the same); Docket Alerts, https://www.docketalerts.com/ (the same). News organizations and legal non-profits employ the tactic as well, sometimes creating social media accounts—like Big Cases Bot (@big_cases) or Tech Cases Bot (@techcases_bot)—to auto-download and quickly circulate court filings. *See* Adi Robertson, *How to Follow The Verge's New Tech Cases Bot*, The Verge (Sept. 12, 2023), https://www.theverge.com/23869657/verge-free-law-project-tech-cases-bot-how-to-follow-x-twitter-mastodon.

that had been a mainstay of civil procedure for decades. 28 U.S.C. § 1441(b)(2). This move is now commonly known as "snap removal." And while evaluating the permissibility of snap removal might make good fodder for confusing law students on a final exam, it has also caused confusion and inconsistency across the federal trial courts. *See Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 934–38 (N.D. Ill. 2017) (collecting cases and noting arguments both for and against snap removal are "colorable" and "well-grounded").

The court must now decide whether to allow a snap removal to proceed. Plaintiff Pennsylvania Manufacturers' Association Insurance Company sued its policyholder—the defendant, Fidelitone, Inc.—in Cook County Circuit Court seeking a declaratory judgment that it does not owe the defendant indemnification in an underlying lawsuit.[2] (Dkt. 1-1.) Defendant "snap removed" this declaratory judgment action to this federal forum, and the plaintiff now moves to remand the matter back to state court. (Dkts. 1, 7.) For the following reasons, plaintiff's motion is granted and the case is remanded.

## BACKGROUND

Underlying this declaratory judgment suit is a putative class action brought under the Illinois Biometric Information Privacy Act, 740 Ill. Comp. Stat. 14/1, *et seq*, commonly known as "BIPA." (Dkt. 1-1, Ex. A.) Defendant's employees allege that it—a supply chain management firm based in Wauconda, Illinois—mishandled their fingerprints, which the company uses as modern "timecards" for punching in and out of a shift. (*See generally id.*) As to the matter before this court, plaintiff, an insurance company, seeks a declaration that it has no obligation to defend

---

[2] Jasmine Locke, the other named defendant in this case, brought the underlying lawsuit. Because Locke has no other involvement in this dispute over insurance coverage between plaintiff and Fidelitone, the court refers to Fidelitone as "defendant."

or indemnify its policy-holding defendant in the underlying BIPA class action, and further seeks recoupment of costs already incurred in defending that suit. (Dkt. 1 ¶¶ 4–7.)

Plaintiff initially brought suit in the Circuit Court of Cook County, filing on December 14, 2023.[3] (Dkt. 1 ¶ 1.) On December 19, the defendant—who had not yet been served with process (*id.* ¶ 3)—filed a notice of removal. (Dkt. 1). Because plaintiff is a corporate citizen of Pennsylvania and defendant is a corporate citizen of Delaware with its principal place of business in Illinois (*id.* ¶¶ 9–14; dkt. 7 at 2), there is complete diversity of the parties to the declaratory judgment action, and the amount in controversy likely exceeds the statutory minimum of $75,000. *See* 28 U.S.C. § 1332. However, defendant's principal place of business in suburban Chicago means it "is a citizen of the State [of Illinois,] in which such action is brought." (Dkt. 7 at 4 (quoting 28 U.S.C. § 1441(b)(2))).

Typically, this would preclude removal under the forum-defendant rule. *See* § 1441(b)(2). But the defendant argues it is not subject to the forum-defendant restriction because it had not been served with process when it noticed removal. (Dkt. 10 at 1). Because it beat the process server to the punch, defendant asserts such removal is proper under 28 U.S.C. §§ 1332(a), 1441(b)(2), and 1446(b)(1). (Dkt. 1 ¶¶ 3, 8–14.) Plaintiff now seeks to remand its declaratory judgment action back to the Cook County courts. (Dkt. 7.)

## **LEGAL STANDARD**

The burden of establishing federal jurisdiction falls on the party seeking removal. *Schur* v. *L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing *Doe* v. *Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). Statutes governing removal to federal court are

---

[3] Defendant writes in its removal notice that plaintiff filed the declaratory judgment action on December 18. (Dkt. 1 ¶ 1.) However, the complaint attached to the removal notice is stamped December 14, 2023, at 2:13 p.m. (Dkt. 1-1 at 1.)

construed narrowly, *see Marsh* v. *CSL Plasma Inc.*, 503 F. Supp. 3d 677, 680 (N.D. Ill. 2020) (quoting *Allied-Signal*, 985 F.2d at 911), and courts should "resolve doubts about removal in favor of the Plaintiffs' choice of forum in state court." *Id.* (citing *Morris* v. *Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013)). Further, it is generally "presume[d] that the plaintiff may choose his or her forum." *Norwegian Air Shuttle ASA* v. *Boeing Co.*, 530 F. Supp. 3d 764, 769 (N.D. Ill. 2021) (quoting *Allied-Signal*, 985 F.2d at 911).

## DISCUSSION

In seeking remand, plaintiff argues that the defendant's reading of § 1441(b) to allow removal before service is wrong, that no authority binds this court to that reading, and that such a reading is inconsistent with the position previously taken by this court in *Vivas* v. *Boeing Co.*, 486 F. Supp. 2d 726 (N.D. Ill. 2007) (Lefkow, J.,). In turn, defendant urges reconsideration of the court's rationale in *Vivas*, stressing the plain text of the statute and the weight of the authority that has developed after that case was decided in early 2007. Ultimately, the court agrees with plaintiff and declines the invitation to revise its previous opinion.

**I.     The Court's *Vivas* Holding**

To begin, it is undisputed that there is complete diversity of parties in this case. (*See* dkt. 1 ¶¶ 8–14; dkt. 7 at 1–6). The only question before the court is "whether [the defendant] can avoid the forum defendant limit on diversity jurisdiction through its strategic move of early removal." *Vivas*, 486 F. Supp. 2d at 733. The statutory text of the forum-defendant rule provides, in relevant part, that "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). "When interpreting statutes," courts "give words their plain meaning unless

4

doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *Abruscato* v. *Wells Fargo Bank*, No. 21 C 12, 2022 WL 797166, at *6 (N.D. Ill. March 16, 2022) (quoting *United States* v. *Vallery*, 437 F.3d 626, 630 (7th Cir. 2006)). To assess plain meaning, courts "look to the particular statutory language at issue, as well as the language and design of the statute as a whole" and give words "their ordinary, contemporary, common meaning" unless otherwise defined by the statute. *United States* v. *Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (internal quotation marks and citations omitted). Courts only consider "legislative history and other canons of statutory interpretation" if the statutory language is ambiguous. *Petr Tr. for BWGS, LLC* v. *BMO Harris Bank N.A.*, --- F.4th ----, No. 23-1931, 2024 WL 1132170, at *5 (7th Cir. March 15, 2024) (citing *Nielen-Thomas* v. *Concorde Inv. Servs., LLC*, 914 F.3d 524, 528 (7th Cir. 2019)).

In *Vivas*, the court applied these interpretative principles and remanded a nearly procedurally identical action back to state court. 486 F. Supp. 2d at 734–35. In that case, the defendant argued that despite the forum-defendant rule, § 1441(b)(2) permitted removal so long as an in-state defendant had not yet been "joined and served." *Id.* at 733–34. This court wrote then—and holds now—that such interpretation of § 1441(b)(2) "would frustrate the consistent efforts of both Congress and the courts to determine diversity jurisdiction based on the genuine interests of the parties to the controversy." *Id.* at 734 (citing *Gottlieb* v. *Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). Interpreting § 1441(b)(2) to allow snap removal would "provide a vehicle to defendants to manipulate the operation of removal statutes" in a way that is contrary to Congress's clear intent to provide neutral forums for out-of-state litigants when those litigants feel such a forum is required. *Id.* at 734; *see also Norwegian Air Shuttle*, 530 F. Supp. 3d at 769 (N.D. Ill. 2021) (citing *Morris*, 718 F.3d at 665; *Hertz Corp.* v. *Friend*, 559 U.S. 77, 85 (2010)

5

("[D]iversity jurisdiction's basic rationale [is] opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties."); *Lumbermen's Mut. Cas. Co.* v. *Elbert*, 348 U.S. 48, 54 (1954) (Frankfurter, J., concurring) ("The power of Congress to confer such jurisdiction was based on the desire of the Framers to assure out-of-state litigants courts free from susceptibility to potential local bias.") Allowing this end-run around the forum-defendant rule would significantly abrogate the presumption that plaintiffs typically get their choice of forum. *Norwegian Air Shuttle*, 530 F. Supp. 3d at 769 (citing *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000)); *see also Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (plaintiff is "the master of the complaint").

This court authored *Vivas* 17-years ago—not quite at the dawn of the internet era but before internet technology had become as ubiquitous a part of personal and professional life as it is now. *See* Jeffrey W. Stempel, Thomas O. Main & David McClure*, Snap Removal: Concept; Cause; Cacophony; and Cure*, 72 Baylor L. Rev. 423, 451 (2020). Notably, the term "snap removal" does not even appear in the *Vivas* opinion, and a nationwide search of federal court decisions indicates the term did not come into common usage until the middle of the 2010s.[4] Since 2007, many judges in the Northern District have echoed *Vivas* and held snap removal is an impermissible manipulation of removal statutes. *See Norwegian Air Shuttle*, 530 F. Supp. 3d at 770 (Wood, J.,); *Kern* v. *Krso*, No. 20 C 1404, 2020 WL 3960509, at *3 (N.D. Ill. July 13, 2020) (Aspen, J.,); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 67 F. Supp. 3d 952, 961 (N.D. Ill. 2014) (Kennelly, J.,); *Grimard* v. *Montreal, Me. and Atlantic Ry., Inc.*, No. 13 C

---

[4] The first case using the term in the federal system comes from the Northern District of Texas in the fall of 2015. *Breitweiser v. Chesapeake Energy Corp.*, No. 15 C 2043, 2015 WL 6322625, at *2 n.5 (N.D. Tex. Oct. 20, 2015) ("The term snap removal appears in Plaintiffs' briefing. Other courts do not appear to have used this term of art, but this Court finds it useful for distinguishing the removal in this case from an ordinary removal.") (cleaned up).

6197, 2013 WL 4777849, at *2 (N.D. Ill. Sept. 5, 2013) (Shadur, J.,). However, other jurists in this district have ruled differently. *See, e.g., Wragge* v. *Boeing Co.*, 532 F. Supp. 3d 616, 620–23 (N.D. Ill. 2021) (Valderrama, J.,); *Grandinetti* v. *Uber Techs., Inc.*, 476 F. Supp. 3d 747, 754 (N.D. Ill. 2020) (Chang, J.,); *D.C. ex rel. Cheatham* v. *Abbott Labs, Inc.*, 323 F. Supp. 3d 991, 996–97 (N.D. Ill. 2018) (Dow, J.,); *Graff*, 299 F. Supp. 3d at 937 (St. Eve, J.,).

In sum, there is roughly an even split within the district—one which reflects a nationwide division on the subject. *See, e.g., Graff*, 299 F. Supp. 3d at 934-38 (collecting cases). Because orders granting remand are not appealable and orders denying remand are generally not subject to interlocutory appeal, the Seventh Circuit has never resolved the split. *See* Valerie M. Nannery, *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. 541, 557 (2018); *D.C.*, 323 F. Supp. 3d at 993 (citing *Holmstrom* v. *Peterson*, 492 F.3d 833, 838 (7th Cir. 2007)). But, if anything, the lightning growth of technology to monitor court dockets and rapidly generate pleadings means this court's 2007 *Vivas* rationale is truer today than when first written. The court therefore reaffirms that past position.

## II. Defendant's Argument to Reconsider *Vivas*

Defendant asks the court to reconsider *Vivas*, arguing (1) that the plain text of the removal statute is clear in its favor; (2) that the weight of authority generated after *Vivas* supports this reading of the text and supports removal; and (3) that an extra-textual analysis actually favors removal. (Dkt. 10 at 2, 4, 5.) None of these arguments is persuasive.

### A. Text of the Statute

Defendant's primary argument reflects the primary argument made in favor of snap removal across the country: the plain text of the statute allows the practice. *See Wragge*, 532 F. Supp. 3d at 620–23 (collecting cases applying "the 'plain language' approach"); *Grandinetti*, 476

F. Supp. 3d at 754–56; *D.C.*, 323 F. Supp. 3d at 995–97; *Tex. Brine Co., L.L.C.* v. *Am. Arbitration Ass'n*, 955 F.3d 482, 486–87 (5th Cir. 2020); *Gibbons* v. *Bristol-Myers Squibb Co.*, 919 F.3d 699, 705–07 (2d Cir. 2019). Proponents of this view contend that the "properly joined and served language" in § 1441(b)(2) is unambiguous. Thus, the in-state defendant needs to *have been served* before the forum-defendant rule kicks in.

A number of courts both within and outside this district, however, find § 1441(b)(2)'s construction ambiguous. *See Norwegian Air Shuttle*, 530 F. Supp. 3d at 768 (N.D. Ill. 2021) (collecting cases from districts in Alabama, Massachusetts, and Georgia). This court agrees and adopts Judge Wood's analysis in *Norwegian Air Shuttle ASA* v. *Boeing Co.* As Judge Wood explains, "the language of the forum-defendant rule is ambiguous" for two reasons. *Id.* at 768. First, "[t]he rule is silent as to when a forum defendant must be properly joined and served to defeat removal" and "does not plainly state that a forum defendant may remove a case before any parties are served[.]" *Id.* at 768–69. Second, "it is plausible to read the forum-defendant rule's clause regarding 'any defendant' as requiring that at least one defendant be properly joined and served prior to removal on diversity grounds[.]" *Id.* at 769. To resolve this ambiguity, the court considered "the goals of the forum-defendant rule" and "consisten[cy] with the statutory scheme" to conclude that disallowing snap removal better achieved both purposes. *Id.*

Furthermore, in close cases with plausible readings on both sides, this court is again "mindful of the admonition that '[t]he removal statute should be construed narrowly and any doubts about the propriety of removing a particular action should be resolved *against* allowing removal.'" *Vivas*, 486 F. Supp. 2d at 734 (quoting *Wirtz Corp.* v. *United Distillers & Vintners NA, Inc.*, 224 F.3d 708, 715–16 (7th Cir. 2000) (Ripple, J., concurring)). If any doubt exists to the clarity of the language, the doubt is to be resolved in favor of the party arguing for the courts

8

of general jurisdiction. *See id.* Doubt exists here, and the existence of such doubt weighs toward granting the motion for remand.

Additionally, even if the plain text of the forum-defendant rule allowed for snap removal, this court could still disallow the practice if applying the plain language "would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *Jefferson* v. *United States*, 546 F.3d 477, 483 (7th Cir. 2008) (quoting *Gillespie* v. *Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007)); *see also Nixon* v. *Mo. Municipal League*, 541 U.S. 125, 138 (2004) ("Court[s] will not construe a statute in a manner that leads to absurd or futile results") (citing *United States* v. *Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940)). Considering the intent of the forum-defendant rule—which is rooted in the genuine interests and citizenship of the parties, not whether a party is served with process in an hour, a day, or a week—the court "concludes that the loophole for which [d]efendants advocate would lead to an absurd result, inconsistent with the statutory purpose." *Norwegian Air Shuttle*, 530 F. Supp. 3d at 770 (citing *Kern*, 2020 WL 3960509, at *3); *see also Vivas*, 486 F. Supp. 2d at 734 (citing *Gottlieb*, 990 F.2d at 327). Experience shows that to hold otherwise would provide—and in fact, has provided—"a vehicle for defendants to manipulate the operation of the removal statutes ... against what the courts have long understood to be Congress's intent." *Vivas*, 486 F. Supp. 2d at 734. Remand is appropriate.

**B.  Weight of Authority**

Defendant next asserts that this court's view in *Vivas* has, over time, become the minority view nationwide. (Dkt. 10 at 2, 4.) Whether this is an empirically accurate description of how district courts resolve motions for remand in snap removal cases is debatable. *See* Thomas O. Main, Jeffrey W. Stempel & David McClure, *The Elastics of Snap Removal: An Empirical Case*

9

*Study of Textualism*, 69 Clev. St. L. Rev. 289, 306–07 (2021) (dataset of 193 snap removal decisions by federal judges not bound by circuit precedent shows a "total aggregate successful removal rate of 53%" for the 30 years ending in 2020). But to be sure, the Second, Third, and Fifth Circuit Courts of Appeals have endorsed defendant's reading of the removal statute. *Tex. Brine Co.*, 955 F.3d at 486; *Gibbons*, 919 F.3d at 705; *Encompass Ins. Co.* v. *Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018). Defendant's contention that "[e]ach of the four … circuits addressing this unique issue has reached the same conclusion [allowing snap removal]," however, is flawed in two ways. (Dkt. 10 at 1.)

First, the snap removal portion of the Sixth Circuit decision in *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001)—which defendant includes without distinction in string citation with the Second, Third and Fifth Circuit cases, (dkt. 10 at 1, 3, 5)—is footnote dicta; not necessarily followed by judges even within that circuit. *See Little* v. *Wyndham Worldwide Operations*, Inc., 251 F. Supp. 3d 1215, 1219 (M.D. Tenn. 2017) (collecting cases noting the footnote is dicta before remanding a snap removal). Second, while the Eleventh Circuit has not issued a binding decision on snap removal as that question was not before it, the court's suspicion of and obvious disdain for this manipulation and its ability to defeat the forum-defendant rule leaps off the page. *See Goodwin v. Reynolds*, 757 F.3d 1216, 1220–21 (11th Cir. 2014) (writing the purpose of adding "joined and served" was to *prevent* removal gamesmanship and endorsing snap removal would "turn the statute's 'properly joined and served' language on its head.") In short, the circuits—none of which binds this court—are not as neatly aligned in favor of allowing snap removal as defendant represents.

### C. Congressional Purpose

Finally, defendant argues that congressional purpose and other extra-textual evidence favors allowing snap removal. (*See* dkt. 10 at 5–8.) Virtually all courts agree that the legislative purpose of diversity jurisdiction is clearly discordant with snap removal, but many courts ruling in favor of snap removal find that such discord is not "truly absurd" enough to supplant plain text. *See Grandinetti*, 476 F. Supp. 3d at 756. Instead, these courts consider this loophole to be a "serious disparity" for Congress to fix. *Id.*; *see also Wragge*, 532 F. Supp. 3d at 622 ("[A]bsurdity is not mere oddity. The absurdity bar is high …. The result must be preposterous, one that no reasonable person could intend.") (quoting *Tex. Brine Co.*, 955 F.3d at 486).

Additionally, supporters of snap removal sometimes argue that, if the primary purpose of diversity jurisdiction is to prevent local prejudice, "allowing snap removal does not [necessarily] *encourage* local prejudice," and thus the purpose of diversity jurisdiction is not as dramatically undermined as plaintiffs might claim. *Wragge*, 532 F. Supp. 3d at 622 (citing *W. Bend Mut. Ins. Co.* v. *MSPPR, LLC*, No. 20 C 3308, 2021 WL 463259, at *3). Some further note Congress's failure to re-write the removal language to bar snap removal when making other language tweaks in 2011. *See, e.g.*, *Regal Stone Ltd.* v. *Longs Drug Stores Cal., L.L.C.,* 881 F. Supp. 2d 1123, 1129 (N.D. Cal. 2012) (lamenting Congress's failure to clarify and refusing to remand to not "disrupt the settled expectations of litigants.")

Defendant channels these arguments here. It contends that Congress's intent in passing § 1441(b)(2) in 1948 was actually to combat the so-called "fraudulent joinder" loophole—the naming of a sham in-state defendant purely to defeat removal—and that defendant's reading is not inconsistent with that more narrow legislative purpose; that Congress's failure to amend the statute in 2011 as the snap removal problem was emerging is proof the statute as currently

11

constructed is proper; that a "bright-line rule" contingent on service is logical; and that the "window of opportunity to remove this particular case, between the filing of the complaint and service, [is] a function of the Illinois service statute, which, like the forum-defendant rule itself, has not been amended in response to [snap] removals by forum defendants before service." (Dkt. 10 at 5–8.)

While there is clear consensus that Congress intended to address the fraudulent joinder problem in authoring the "joined and served" language in 1948—*see, e.g.,* Stempel et al., *Cacophony*, *supra*, at 441–42; *Sullivan* v. *Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 643 (D.N.J. 2008) (collecting cases)—that does not mean the overriding, core purpose of diversity jurisdiction was supplanted by this legitimate concern. Section 1441(b)(2) was not intended to kneecap the forum-defendant rule but, rather, to address the naming of non-legitimate defendants to defeat removal, as well to discourage procedural skullduggery, such as failing to serve a joined forum defendant to prevent removal. *See* Stempel et al., *Cacophony*, *supra*, at 442–43 (citing, in part, Nannery, *Closing the Loophole, supra*, at 548). Ironically, some seven decades later, the "joined and served" language has seeded the same sort of skullduggery it once aimed to defeat. *See Goodwin,* 757 F.3d at 1220–22; *Testosterone Replacement Therapy*, 67 F. Supp. 3d at 961; *In re Paraquat Prods. Liab. Litig.*, No. 21 MD 3004, 2022 WL 3754820, at *6-8 (S.D. Ill. Aug. 30, 2022).

Indeed, "it is inconceivable that Congress, in adding the 'properly joined and served' language, intended to create an arbitrary means for a forum defendant to avoid the forum-defendant rule simply by filing a notice of removal before the plaintiff is able to effect process." Stempel et al., *Cacophony*, *supra*, at 445. Such a rule (in addition to being non-sensical) would be an abrogation of state sovereignty, opening the door for federal courts to decide state-law

12

claims brought against in-state defendants on an arbitrary basis. *Cf. Allied-Signal*, 985 F.2d at 911 ("Any doubt regarding jurisdiction should be resolved in favor of the states."); *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100, 108–09 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.") (quoting *Healy* v. *Ratta*, 292 U.S 263, 270 (1934)). Nor does the court credit defendant's related suggestion that because the Illinois General Assembly has not amended the statute requiring service by the county sheriff in counties with populations of 2,000,000 or more in the wake of increased snap removal, *see* 735 Ill. Comp. Stat. 5/2-202(a), that the legislature is purposefully condoning defendants' taking state-law issues out of Illinois's own courts.[5] (Dkt. 10 at 8.)

To the extent this court must pick which loophole to favor, sham defendants or snap removers, the court again declines "to write[] the forum-defendant rule out of existence" for monied, sophisticated defendants, while leaving it in place for everyone else. *Norwegian Air*, 530 F. Supp. 3d at 770. That result *is* "preposterous." *Tex. Brine Co.*, 955 F.3d at 486. But ultimately this "choice" is a false dilemma. This court's interpretation of the removal statute prevents snap removal gamesmanship while continuing to allow an out-of-state defendant to demonstrate that an in-state co-defendant has been improperly joined—thus keeping closed the fraudulent joinder loophole Congress tried to brick up with the "joined and served" language without creating another. *See Norwegian Air*, 530 F. Supp. 3d at 769 ("[I]f snap removal is

---

[5] This statute makes the threat of using snap removal to manipulate the forum-defendant rule particularly high in Cook County. *See Testosterone Replacement Therapy Prods. Liab. Litig.*, 67 F. Supp. 3d at 961. Even the most diligent and resourced plaintiffs simply cannot force sheriff's deputies to jump into action. *See id.*

rejected, the loophole involving improper joinder is closed but forum defendants are not incentivized to avoid removal by evading service.").

And to the extent Congress declined to re-write the statute in 2011—four years before the term "snap removal" could even be heard in a federal courthouse[6]—the court "sees no reason that Congress's inaction on the question should be read as an endorsement." *Id.* at 770. Indeed, "Congress's silence on the topic is just that — silence" and "is not commentary on the accuracy of one interpretation as opposed to another." *Testosterone Replacement Therapy*, 67 F. Supp. 3d at 960. In 2011, federal legislators "simply did not have the issue of premature removal in mind." *Regal Stone Ltd.*, 881 F. Supp. 2d at 1129 (noting H.R. Rep. No. 112-10 omits mention of the district courts' split). And because "Congress could not possibly have anticipated the tremendous [technological] loophole that would one day manifest," it would not have considered the relative merits of a service-delineated rule in the modern era, nor the different approaches to service among the several states, when it constructed the "joined and served" language in the statute in 1948. Stempel et al., *Cacophony*, *supra*, at 441–46.

To the contrary even, Congress's insistence that plaintiffs properly join and serve defendants, lest they simply name them to defeat removal, indicates Congress intends service to be the "starting gun" for litigation, and removals prior to service are therefore premature. *Cf. Murphy Bros.* v. *Michetti Pipe Stringing*, 526 U.S. 344, 356 (1999) (holding procedural rights are predicated on service and rejecting the "notice standard" and attendant "courtesy copy trap" suggested by 28 U.S.C. § 1446(b)). If, as defendant argues, service "is the traditional point at which a defendant becomes 'subject to [a] court's authority'"—(dkt. 10 at 6) (quoting *Murphy*

---

[6] *Supra* note 4. Although the term "snap removal" had not yet come into common usage, the issue had begun to percolate quietly in district courts shortly before 2011. *See North* v. *Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1268 (M.D. Fla. 2009) (collecting early cases).

14

*Bros.*, 526 U.S. at 356)—then defendants in a litigation cannot prematurely subject themselves to the authority of the federal system prior to receiving service.

In short, snap removals turn diversity jurisdiction, designed to shield out-of-state defendants from hometown bias, into a sword for well-resourced defendants to select their forum when they are sued in their own state's courts. The court declines to "write[] the forum-defendant rule out of existence for … defendants with … resources." *Norwegian Air*, 530 F. Supp. 3d at 770. It therefore reaffirms its decision in *Vivas* and remands the case.

## CONCLUSION AND ORDER

For the foregoing reasons, the plaintiff's motion is granted and the case is remanded to the Circuit Court of Cook County for further proceedings.[7]

Date: April 4, 2024

_____
U.S. District Judge Joan H. Lefkow

---

[7] The court is grateful for the thorough reexamination of this issue by a law-student extern, Charles Johnson, who was given the assignment to prepare a draft opinion for the court's review.